STATE of Missouri,
Plaintiff–Respondent,

v.

Lafair D. SMITH, Defendant–Appellant.

No. 52755.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 3, 1987.

Motion for Rehearing and/or Transfer
Denied Dec. 10, 1987.

Application to Transfer Denied
Jan. 20, 1988.

Mary C. McWilliams, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Lafair D. Smith, appeals from his conviction, after a jury trial, for first degree tampering. He was sentenced as a prior and persistent offender to seven years imprisonment. We affirm.

On appeal, defendant claims the trial court erred: (1) in overruling his motion for a judgment of acquittal after the State's opening statement; (2) in sustaining the State's objection to alleged impeachment evidence which defense counsel sought to elicit during the cross-examination of a State's witness; and (3) in denying defendant's motion to suppress out-of-court identifications. We affirm.

On November 22, 1986, at roughly 6:00 p.m., four police officers were traveling in a marked police car. They noticed a 1977 Cadillac bearing a license plate number which was listed on the police department's hot sheet. The officers pursued the vehicle until it eventually stopped, hitting a curb and striking a parked car in the process. The driver of the stolen vehicle exited and began running. Two police officers pursued him on foot into a well lit area of a housing project, and then lost sight of him. The two other police officers remained with the Cadillac and arrested the passenger, Robert Rogers. After questioning Rogers, they placed a "Wanted" on defendant and notified St. Mary's Honor Center of defendant's status. The same officers later proceeded to the Honor Center where they took defendant into custody. When they returned to the police station, defendant was placed in a lineup. The two police officers who had pursued him identified him as the individual who had run from the stolen vehicle.

Defendant first claims the trial court erred in overruling his motion for a judgment of acquittal after the State's opening statement. Defendant contends that the prosecutor did not sufficiently identify the defendant as the driver of the stolen Cadillac and did not allege facts associating

defendant with the commission of the crime of tampering in the first degree. We disagree.

The following excerpts from the record disclose portions of the State's opening statement pertinent to this issue:

The evidence will further show that the police officers contacted the St. Mary's Honor Center and told them that when the defendant—and the information on how they realized it was the defendant will come out at trial, to hold the defendant when he came in at night. We'll have officers here who will testify about the procedures for people who reside there as to how they come and go whatever.

Once Lafair Smith entered some correctional officers started walking toward him to detain him for the police because they had been called and said he was wanted for tampering which is unlawfully operating a car, driving a stolen car.

     *     *     *     *     *     *

Now at the close of the State's Evidence, we'll expect you to return a verdict of guilty to Tampering First, which is the defendant driving Mrs. Merriweather's car which was a stolen car, and he did this on January 22nd, 1986 in the City of St. Louis, and we're taking about in the evening hours approximately 6:30 or 6 o'clock.

■ The purpose of the State's opening statement "is to advise the jury of the facts the state intends to prove and to inform the defendant of the planned course of prosecution in order to fairly enable the defendant to defend against the charges brought against him. Accordingly, an opening statement is deemed sufficient when together with the reasonable inferences drawn therefrom, the defendant is apprised of the charges against him." *State v. Bauers*, 702 S.W.2d 896, 899 (Mo. App.1985) (citation omitted). While the trial court has the power to enter a judgment of acquittal after the prosecutor's opening statement, that authority should be exercised only if it affirmatively and clearly shows that the State cannot make a submissible case under any view of the evidence, and the State is given an opportunity to embellish its statement in response to defendant's motion. *Id.*

We find that the prosecutor's opening statement was sufficient to inform defendant that he was charged with tampering in the first degree. The reasonable inference to be drawn from the prosecutor's remarks was that the State would undertake to prove that defendant had been identified as the individual seen operating a stolen vehicle; and, thus, defendant was guilty of tampering in the first degree. Defendant's first point is denied.

■ Defendant next claims the trial court erred in sustaining the State's objection during defense counsel's cross-examination of a State's witness, Lena Lewis. Ms. Lewis was the mother of Robert Rogers, the passenger arrested by the police officers after they stopped the stolen vehicle. The following exchange occurred during direct examination of Ms. Lewis by the State:

Q. Now Miss Lewis, did me or anyone from my office or a police officer or anyone ever make any promises to you in return for your coming to testify?

A. No, ma'am.

Q. Did we ever tell you that we would help your son out in any way for coming down here today?

A. No, ma'am.

During cross examination, defense counsel started to question Ms. Lewis regarding the disposition of Robert's case. The State objected on the grounds of hearsay and relevancy. The trial court sustained the State's objection.

[DEFENSE COUNSEL]: What happened to Robert's case?

[PROSECUTOR]: Objection, this lady is not qualified to testify as to what happened, that's hearsay.

[DEFENSE COUNSEL]: She opened the door, Your Honor.

THE COURT: Objection sustained.

[DEFENSE COUNSEL]: Where is Robert today?

[PROSECUTOR]: Objection as to the relevancy, Your Honor.

THE COURT: Sustained.

 Defendant's position is that pursuit of this line of questioning was a proper attempt at impeaching Ms. Lewis's testimony, his theory being that the disposition of Robert's case served as the impetus for Ms. Lewis's motivation to testify. It is appropriate to cross-examine a witness to discover any interest, bias, or motive for testimony that would serve to impeach that testimony. *State v. Conley*, 699 S.W.2d 50, 51 (Mo.App.1985). The scope and extent of such cross-examination is a matter consigned to the sound discretion of the trial court and we review only to determine whether that discretion has been abused. *Id.* A witness may be cross-examined on irrelevant matters for the purpose of attacking his credibility, but the answers sought must affect his credibility. *State v. Kirk*, 510 S.W.2d 196, 200 (Mo.App.1974).

Here, defense counsel asked, "What happened to Robert's case?" and "Where is Robert today?" These questions were not probative of the issue of Ms. Lewis's credibility. Theoretically, a favorable disposition by the State of Robert's case could have motivated Ms. Lewis to identify defendant as the individual she saw driving the grey Cadillac in January, 1986. Defense counsel's specific questions, however, did not impeach Ms. Lewis's credibility affecting the identification issue, because the answers regarding Robert's fate would not have proven the existence of a bargain between the State and Ms. Lewis. Since the defense counsel's questions could not have impeached Ms. Lewis's credibility, the trial court did not abuse its discretion in refusing to permit such testimony. Defendant's second point is denied.

In the third point on appeal, defendant claims that the trial court erred in denying his motion to suppress the lineup identifications made by two police officers. The lineup took place approximately two hours after the officers first spotted the stolen vehicle. The factors to consider in determining the reliability of a witness's identification are the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated at the confrontation, and the amount of time between the crime and the confrontation. *State v. Robinson*, 641 S.W.2d 423, 427 (Mo. banc 1982). Both officers had ample opportunity to view defendant's face as they pursued defendant during his escape from the stolen vehicle. We find from our review of the record that the lineup identifications by the police officers met the test for reliability. Defendant's third point is denied.

The judgment of the trial court is affirmed.

SIMON, P.J., and GRIMM, J., concur.